UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO: 8:11-cr-115-T-30MAP

WILLIAM L. KALE
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant William L. Kale's Motion for New Trial Based upon *Brady v. Maryland* (Dkt. #744), the Government's Response in opposition (Dkt. #768), and Kale's Reply (Dkt. #784). Kale contends the Government suppressed an FBI Form FD-302 Report of Interview of Dr. Nicholas Abid ("the Report") that would have materially assisted his defense and that he should receive a new trial. Upon consideration of the pleadings and the case law, the Court concludes that the motion should be denied.

## RELEVANT BACKGROUND

A brief summary of the Government's case is helpful to understand the issue presented in Kale's motion. All four Defendants were employees of WellCare, an HMO providing services pursuant to the Florida Medicaid program administered by the Agency for Health Care Administration ("AHCA"). Florida had an 80/20 requirement for its Medicaid behavioral health care program. AHCA paid HMOs on a capitated basis (a per member per month amount). The HMOs were entitled to keep 20% for overhead and

profit and were to spend the remaining 80% on services. Any portion of the 80% not expended was to be refunded to AHCA.

Each year, AHCA sent a form to each HMO with the amount paid by AHCA already filled in for the HMOs to provide their expenditure information and calculate the amount of refund, if any. WellCare, dissatisfied with the amount of money it was having to refund, decided to form a subsidiary to provide the services, and pay it 85% of the premium received from AHCA. Thus, its "expenses" always exceeded the 80%. In spite of this, WellCare refunded some amount each year. It would determine the amount it wanted to refund and then work backward with the numbers to support that amount. The Government's position was that this refund strategy was designed to avoid detailed scrutiny from AHCA. The defense argued at trial that the types of expenses to be placed on the form sent annually by AHCA were not clear, and that the formation of the subsidiary had been approved by both in-house and outside counsel.

When it became obvious at trial that Kale might present an advice of counsel defense, the Government moved to offer into evidence a portion of Kale's pre-trial sworn proffer to the Government. In the proffer, Kale said he had spoken with outside counsel (Gary Clarke) about whether the subsidiary arrangement would be acceptable, and Clarke "doubted that it would be." Clarke asked Kale why WellCare did not just spend the entire 80% on services as intended by AHCA. Kale told Clarke that "there was too much money and they could not spend it all if they tried."

Case law is clear that a pre-trial proffer, even one that the Government has agreed not to use against the defendant at trial, may be offered into evidence if the defendant presents a defense or argument contrary to the proffer. The Court told Kale's counsel that if he argued to the jury that he was never informed by counsel that WellCare's approach to the 80/20 calculation was inappropriate, the Court would permit the Government to introduce the relevant contrary portions of Kale's proffer. If that argument was not made, Kale's proffer would not be admitted.

Kale's counsel elected not to make the advice of counsel argument (at least directly). The defense did present a thick stack of bills from outside counsel, and testimony of multiple conversations and e-mails with Clarke about the formation of the subsidiary and the types of expenses appropriate to include on the reporting form. But during these conversations, Clarke refused to provide a "clean opinion" about the propriety of the use of a subsidiary in calculating expenses.

In making the decision about whether to have Kale testify that "no lawyer told me it was illegal," the defense now contends:

> They [the defense team] might well have decided that the value and benefit of Dr. Abid's testimony [the Report allegedly suppressed] outweighed the risk presented by admission of the disputed portion of Dr. Kale's 302. The government's suppression of Dr. Abid's statement, however, took that choice away from Dr. Kale and his counsel. Thus, the evidence presented in his defense was limited and closing argument presented on his behalf was unnecessarily restricted.

(Dkt. #784 at p. 3).

## THE REPORT

In 2009, about four years before the trial took place in 2013, Kale testified in a deposition by the Securities and Exchange Commission ("SEC") as part of an investigation into possible violations of federal securities by WellCare. Kale was represented by counsel.[1] Kale was asked who he had spoken to about the criminal investigation. Kale answered, "I have talked to family and some friends." The "some friends" included four individuals still employed at WellCare. One of the four friends was "Nick Abid." Kale acknowledged that these discussions included information about the 80/20 issues. And he said that he had expressed his "opinion about the whole situation."

The FBI continued to interview potential witnesses during the 2013 trial. Dr. Abid was one of these witnesses. On April 17, 2013, the FBI interviewer, Special Agent Edward Ortega, prepared the Report that included the following:

> ABID related that on one occasion, he and KALE spoke about the 80/20 issue. This conversation took place way before the federal raid at WELLCARE (October 2007). ABID asked KALE the way one was to figure out the 80/20; to which KALE responded that the formula was unclear. ABID then asked KALE why he did not ask the state (for an explanation). KALE told ABID that he suggested it, but got shot down.

(Dkt. #744-1 at 4/7).

---

[1] Counsel filed a Notice of Appearance in this case at Dkt. #45.

The Report was given to the defense after the conclusion of the trial. Defense counsel then conducted its own interview of Dr. Abid in which Abid stated in relevant part:

> During my interview, Agent Ortega did not ask me whether Dr. Kale had ever discussed with me his interactions with WellCare lawyers regarding the 80-20. Had he asked, I would have explained to him that in the Spring of 2007 Dr. Kale had told me that WellCare attorneys had vetted and approved the WellCare approach to the 80-20 filing.

(Dkt. #744-1 at 3/7).

Kale now argues that the information in the Report would have allowed him to present the testimony of Dr. Abid corroborating and supporting Kale's defense that Kale lacked any criminal intent necessary to support a conviction. And Kale contends that had his counsel been provided with the Report during trial, they "would have been able to unearth Dr. Abid's recollection of conversation with Dr. Kale relating to his state of mind, more specifically, his lack of fraudulent intent. Dr. Abid would have been called to the witness stand to testify to Dr. Kale's belief that WellCare's counsel had advised him of the legality of WellCare's 80/20 reporting methodology." (Dkt. #744 at p. 5).

## **DISCUSSION**

Kale contends that the Government's failure to turn over the Report violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The Eleventh Circuit's framework for evaluating a *Brady* claim is:

> A *Brady* violation has three components: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is

> impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Evidence is not considered to have been suppressed if "the evidence itself … proves that [the petitioner] was aware of the existence of that evidence before trial." *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995). The prejudice or materiality requirement is satisfied if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Materiality is determined by asking whether the government's evidentiary suppression undermines confidence in the guilty verdict. *See Kyles*, 514 U.S. at 434, 436-37 & n. 10, 115 S.Ct. 1555.

*Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F. 3d 1320, 1334-35 (11th Cir. 2012).

Kale's claim of a *Brady* violation fails for three reasons: the Report was not exculpatory, it was not suppressed, and Kale was not prejudiced. The Report merely said that Kale told Abid that the AHCA instructions for the expense portion of the formula were unclear, that he suggested that WellCare ask AHCA for an explanation, and that he "got shot down." That is not evidence that he refused to participate in the scheme. For example, if a bank robber suggests that a plan to rob a bank is a bad idea, and gets "shot down," but thereafter continues to participate in the robbery, that evidence is not exculpatory.

The Report was not suppressed. Where the evidence in question shows that either the defendant or his attorney was aware of the evidence, there is no *Brady* violation. As the Eleventh Circuit stated in *Felker v. Thomas*:

> We have held numerous times that there is no suppression, and thus no *Brady* violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information. *E.g., United States v. Valera*, 845 F.2d 923, 927-28 (11th Cir. 1988), *cert. denied*, 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989); *Halliwell v. Strickland*, 747 F.2d 607, 609 (11th Cir. 1984), *cert. denied*, 472 U.S. 1011, 105 S.Ct. 2711, 86 L.Ed.2d 726 (1985); *United States v. Cravero*, 545 F.2d 406, 420 (5th Cir. 1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977). Because the information in question was not suppressed from Felker's own personal knowledge, his *Brady* claim fails for that reason.

52 F. 3d 907, 910 (11th Cir. 1995). Here, the FBI's interview was a follow up to Kale's own identification of Abid as someone he had talked to about the 80/20 issues. And Abid's statements are merely a repetition of what he says Kale told him.

Kale attempts to avoid the clear holding in *Boyd* and *Felker* by arguing that the *Brady* violation is not the statement of Kale, but rather the FD-302 report of the statement of Abid, which demonstrates Kale's state of mind. Kale contends that this situation is more like the one found in *United States v. Severdija*, 790 F. 2d 1556 (11th Cir. 1986). In *Severdija*, the captain of a ship, Severdija, was convicted of conspiracy to possess with intent to distribute marijuana found on his ship. Days before his arrest, the Coast Guard had boarded Severdija's ship to conduct a safety inspection. Severdija told the Coast Guard he had been hired to tow a disabled vessel which had not yet appeared, he did not know his crew very well and did not trust them, he knew a big load (drugs) was coming in a few days on a shrimper, and that the Coast Guard should stick around the area because the fishing would be good. The Coast Guard officer included this conversation

in his written report of the encounter. Severdija did not know either the name of the Coast Guard officer or that a report had been taken.

The Eleventh Circuit held the Government's failure to turn over a copy of the Coast Guard's report was a *Brady* violation. It concluded that the written report provided independent evidence of Severdija's state of mind as expressed by his words and deeds to a third party prior to his arrest. *Id.* at 1559. Kale contends that this case is like *Severdija* because the evidence in question is a recorded statement reflecting Kale's state of mind.

The Court disagrees. First, the holding in *Severdija* is based on an unusual and exculpatory set of facts – a defendant providing a tip to a law enforcement officer of a crime before it happens and for which the defendant is later charged. Second, Severdija did not know the information existed in written form and had no way of discovering it because he did not know the officer's name or that the Coast Guard had made a report of the conversation. Unlike Severdija, Kale himself identified the four persons to whom he spoke concerning the 80/20 issues.

Notably, the Report reflects that Abid knew very little about the 80/20 issue. The Report also does not reference anything related to Kale's alleged reliance on the advice of counsel. As to Kale's claim that the defense could have discovered additional favorable information by interviewing Abid, the Government never possessed that information and therefore could not have suppressed it. And Kale was aware of the information in the

Report.  Not only is Kale the one who told the information to Abid, he told the same information later to the FBI in his proffer, to the SEC in his deposition, and to the WellCare special committee during its investigation.

Kale's *Brady* claim also fails because he has not shown prejudice.  The information was not material; it does not undermine confidence in the verdict because the defense presented the same information to the jury throughout the trial.  The main thrust of the defense at trial was that the expenses allowed for the calculation of the refund were not clear, AHCA's limitation on expenses was unfair, and outside counsel Clarke approved reporting the amount paid to the subsidiary as an appropriate expense.

Both Clarke and his partner (Ranier) testified at trial.  They were examined and cross-examined thoroughly about what expenses were appropriate to claim in the refund calculation and specifically about whether they had "approved" the use of a subsidiary in calculating the expenses.  Clarke and Ranier both testified that they told WellCare at the time the subsidiary was formed they doubted AHCA would approve WellCare's proposed plan of calculation, and recommended that the use of a subsidiary be disclosed directly to AHCA.

Clarke's suggested approach of being up front with AHCA echoes Abid's question to Kale, "why he did not ask the State (for an explanation)."  Kale's response was that he got "shot down."  This same information was put before the jury.  In fact, the defense includes in its motion for new trial a copy of an e-mail in which Kale stated he was in

favor of "going the dispute resolution route." That e-mail was sent to Kale's superiors, including in-house counsel Mike Tyrell. But his suggestion ended there. He was "shot down." This e-mail was entered into evidence as Defendant's Exhibit 1977. (Dkt. #744-2).

The Government points out in its opposition (Dkt. #768) that had Abid testified, as now suggested by Kale, it would have been after the jury had already heard substantial contrary evidence about Kale's knowledge about what expenses were allowed according to AHCA, and that the subsidiary had been set up as a way to avoid paying back more money to AHCA. Any testimony from Abid on the subject would have invited a rehashing of this information on cross-examination by the Government as well as an attempt to put in Kale's own statements from his pre-trial proffer and his admissions to the WellCare special committee.

In sum, with respect to the materiality standard, Kale has not shown that the Report would have "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 434-37 (1995) (footnote omitted).

## **CONCLUSION**

The Court concludes that Kale's Motion for New Trial should be denied because the Government's failure to provide the Report to defense counsel does not amount to a *Brady* violation.

It is therefore ORDERED AND ADJUDGED that Defendant William L. Kale's Motion for New Trial Based upon *Brady v. Maryland* (Dkt. #744) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 7th day of October, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2011\11-cr-115 Kale new trial 744.docx