# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 13, 2014

Sheryl L. Loesch
U.S. District Court
801 N FLORIDA AVE
TAMPA, FL 33602-3849

Appeal Number: 14-12422-B
Case Style: In re: WCG
District Court Docket No: 8:11-cr-00115-JSM-MAP

The enclosed order has been entered. No further action will be taken in this matter.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Melanie Gaddis, B
Phone #: (404) 335-6187

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12422-B

_____

In re: WELLCARE HEALTH PLANS, INC.

                                                                        Petitioner.

_____

On Petition for Writ of Mandamus to the United States District
Court for the Middle District of Florida

_____

Before: HULL and JORDAN, Circuit Judges.

BY THE COURT:

Petitioner Wellcare Health Plans, Inc. ("Wellcare") seeks a writ of mandamus declaring it a "victim" within the meaning of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, and the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, and directing the district court to act accordingly.

After review of the record and the briefs of the parties, we deny Wellcare's petition.

## I. BACKGROUND

### A. Underlying Criminal Conduct

The U.S. Attorney for the Middle District of Florida filed a criminal information charging petitioner Wellcare with conspiring through its former officers and employees to defraud Florida healthcare programs. That same day, Wellcare entered into a deferred prosecution agreement. In that agreement, Wellcare stipulated to a "Statement of Facts," wherein it admitted, inter alia, that, "acting through its former officers and employees," it "knowingly and willfully conspired . . . to execute . . . a scheme and artifice to defraud" Florida healthcare programs of approximately $40 million. Wellcare also agreed to pay $40 million in restitution and $40 million in civil forfeiture. And, Wellcare agreed to "fully cooperate" with the government's ongoing investigation into the fraudulent conduct.

After additional investigation, a federal grand jury indicted defendants Todd Farha (Wellcare's former CEO, President, and Chairman of the Board), Paul Behrens (Wellcare's former CFO and Senior Vice President), William Kale (Wellcare's former Vice President of Government and Regulatory Affairs), Peter

2

Clay (Wellcare's former Vice President of Medical Economics), and Thaddeus Bereday (Wellcare's former Senior Vice President, General Counsel, Secretary, and Chief Compliance Officer) with conspiracy, making false statements, and healthcare fraud. Before the defendants' trial, the government designated Wellcare as an un-indicted co-conspirator in the defendants' fraud. A jury found defendants Farha, Behrens, and Kale guilty of healthcare fraud and found defendants Behrens, Kale, and Clay guilty of making false statements.[1]

## B.  Motion for Victim Status and Restitution

Petitioner Wellcare moved to be recognized as a victim of the defendants' crimes and sought restitution under the CVRA and MVRA. The defendants opposed Wellcare's motion. The government neither endorsed nor opposed Wellcare's motion.

The district court concluded that Wellcare was not a "victim" as that term is defined in the CVRA and MVRA because Wellcare was "harmed collaterally but not directly." The district court also noted that it was persuaded by <u>United States v. Lazarenko</u>. 624 F.3d 1247, 1251 (9th Cir. 2010) (holding that a co-conspirator is not a "victim" and cannot recover restitution). Ultimately, the district court

---

[1] The jury deadlocked on the conspiracy count and found the defendants not guilty of the remaining counts.

3

denied Wellcare's motion to be recognized as a crime victim and to be awarded restitution.

Wellcare now petitions this Court for a writ of mandamus pursuant to the CVRA. See 18 U.S.C. § 3771(d)(3).[2] The CVRA does not provide an independent, substantive basis for restitution. It does provide a victim "[t]he right to full and timely restitution as provided in law." Id. § 3771(a)(6). In this case, the substantive basis for restitution is the MVRA, and the parties do not dispute that the offenses fall within the MVRA's scope.

In its present mandamus petition, Wellcare only pursues restitution from defendants Farha, Behrens, and Kale.

## II. DISCUSSION

This mandamus proceeding is a free-standing cause of action, brought by Wellcare, who claims to be a victim of the crimes of defendants Farha, Behrens, and Kale. It is an action against the district court judge who denied Wellcare the

---

[2]Section 1771(d)(3) provides, in relevant part:
> The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure. The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed.

4

right to victim status and corresponding restitution. That is, the proceeding is not an appeal of a district court judgment, nor is it an interlocutory appeal of an intermediate order. The question the petition presents is whether Wellcare is a victim of the criminal conduct of defendants Farha, Behrens, and Kale who is entitled to restitution.

A.   **Legal Principles**

To answer that question, we must first decide what standard of review applies to a petition for a writ of mandamus filed pursuant to the CVRA.[3]

Where a district court denies a request for restitution as provided in law, the CVRA allows that purported victim to "petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). Given Congress's express authorization to file for a writ of mandamus, review under mandamus principles is appropriate absent contrary direction from Congress. See Morissette v. United States, 342 U.S. 246, 263, 72 S. Ct. 240, 250 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it

---

[3]This Court previously left open the question of whether traditional mandamus or normal appellate standards of review apply to CVRA petitions. See In re Stewart, 641 F.3d 1271, 1274–75 (11th Cir. 2011). In a string cite, the D.C. Circuit listed this Court's 2008 Stewart opinion as one that did not use the traditional mandamus standard. See United States v. Monzel, 641 F.3d 528, 532 (D.C. Cir. 2011) (citing In re Stewart, 552 F.3d 1285, 1288–89 (11th Cir.2008)). However, in a later, related Stewart opinion, this Court stated that our 2008 Stewart opinion "did not explicitly indicate the standard . . . used in setting aside the district judge's ruling that petitioners were not CVRA victims." Stewart, 641 F.3d at 1274 (footnote omitted).

5

presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); see also In re Antrobus, 519 F.3d 1123, 1128 (10th Cir. 2008) ("[I]t seems to us relevant that Congress well knows how to provide for ordinary interlocutory appellate review, rather than mandamus review, when it wishes to do so.").

We find no such contrary direction from Congress in the CVRA. Quite the opposite—our text-based conclusion that traditional mandamus review applies in cases such as this is bolstered by other portions of the CVRA.

First, the CVRA requires this Court to decide the mandamus petition within a compressed, 72-hour time period. See 18 U.S.C. § 3771(d)(3). This tight timeline is consistent with our conclusion that we should apply a highly deferential standard of review.

Second, in contrast to a purported victim's right to petition this Court for a writ of mandamus when the district court denies restitution relief, the CVRA allows the government to seek review of that same denial of relief "in any appeal in a criminal case." Compare 18 U.S.C. § 3771(d)(3), with id. § 3771(d)(4) (emphasis added). Congress's clear reference to both writs of mandamus (with respect to the victim's ability to seek immediate review of the district court's

6

denial of relief under the statute) and appeals (with respect to the government's ability to seek review of that denial), indicates that Congress was aware of, and actually intended, different avenues of relief—each with its own corresponding standard of review. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9, 124 S. Ct. 2739, 2754 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (quotation marks omitted)).

Thus, the plain text of the statute and its other compelling textual clues support our conclusion that the traditional mandamus standard of review applies to petitions for writs of mandamus filed pursuant to the CVRA. Accord United States v. Monzel, 641 F.3d 528, 533 (D.C. Cir. 2011); In re Acker, 596 F.3d 370, 372 (6th Cir. 2010); In re Antrobus, 519 F.3d 1123, 1127–30 (10th Cir. 2008); In re Dean, 527 F.3d 391, 394 (5th Cir. 2008).

**B.  Traditional Mandamus Standard**

Because a writ of mandamus is an action against the district court judge, it "is a drastic and extraordinary remedy reserved for really extraordinary causes" amounting to "a judicial usurpation of power" or a "clear abuse of discretion." Cheney v. U.S. Dist. Ct. for the Dist. of Columbia, 542 U.S. 367, 380, 124 S. Ct. 2576, 2586–87 (2004) (quotation marks and citations omitted).

7

Three conditions must be satisfied before a writ of mandamus may issue. Id. "First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires," thus ensuring that the writ does not replace the regular appeals process. Id. at 380–81, 124 S. Ct. at 2587 (quotation marks omitted) (alterations adopted). Second, the petitioner must show that his right to issuance of the writ is "clear and indisputable." Id. at 381, 124 S. Ct. at 2587 (quotation marks omitted). Third, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." Id.

We now apply this traditional mandamus standard to Wellcare's petition and examine whether the district court clearly abused its discretion in denying Wellcare's motion to be recognized as a victim and to be awarded restitution.

## C. Statutory Framework for Restitution

A district court lacks inherent authority to order restitution but can derive such power if explicitly authorized by statute. United States v. Brown, 665 F.3d 1239, 1252 (11th Cir. 2011). As to Wellcare's motion, the district court's authority to award the requested restitution is found, if at all, in the CVRA and MVRA.

The CVRA provides a "crime victim" the "right to full and timely restitution as provided in law." See 18 U.S.C. § 3771(a)(6). The CVRA defines "crime victim" as "a person directly and proximately harmed as a result of the commission

of a Federal offense." 18 U.S.C. § 3771(e).[4] However, the CVRA explicitly provides that "[a] person <u>accused of the crime</u> may not obtain any form of relief under this chapter." 18 U.S.C. § 3771(d)(1) (emphasis added).

In turn, the MVRA not only allows, but requires, the district court to order restitution if the defendant is convicted of an offense "in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1)(B). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2).

Additionally, the CVRA "does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging document." <u>Stewart</u>, 552 F.3d at 1289 (noting that CVRA "victims" need not be mentioned in the indictment). Rather, the CVRA "instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties." <u>Id.</u> "Under the plain language of the statute, a party

---

[4] This Court previously articulated the analytical framework for determining whether a purported victim is, in fact, a victim within the meaning of the CVRA. See <u>Stewart</u>, 552 F.3d at 1288. To identify a CVRA "victim," the court must (1) "identify the behavior constituting 'commission of a Federal offense' "; (2) "identify the direct and proximate effects of that behavior on parties other than the United States"; and (3) determine whether "the criminal behavior causes a party direct and proximate harmful effects." <u>Id.</u> "If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA." <u>Id.</u>

9

may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." Id.

### D. Application to Wellcare's Petition

Here, we conclude that the district court did not clearly abuse its discretion in denying Wellcare's motion to be recognized as a crime victim and to be awarded restitution.

Wellcare is not a "victim" within the meaning of the CVRA or the MVRA. Indeed, Wellcare admitted that it was a co-conspirator in the underlying fraudulent conduct and that, "acting through its former officers and employees," it "knowingly and willfully" conspired to commit the fraud at issue in the underlying case. These facts support our conclusion: (1) Wellcare admitted its participation in the fraud conspiracy, (2) the government designated Wellcare as an un-indicted co-conspirator in the fraud, and (3) Wellcare paid restitution and forfeited assets as a result of its participation in the criminal offenses. Given these facts, Wellcare is not a victim but an admitted perpetrator of a scheme to defraud the government.[5]

To the extent that Wellcare relies on the CVRA for its victim status, the CVRA explicitly prohibits any restitution to Wellcare because the criminal

---

[5]The jury's inability to reach a verdict on the conspiracy counts in the defendants' trial does not vitiate Wellcare's admission that it participated in the conspiracy.

10

information filed against Wellcare accused it of participating in the fraud conspiracy. See 18 U.S.C. § 3771(d)(1) ("A person accused of the crime may not obtain any form of relief under this chapter.").

The MVRA, on its own, similarly precludes Wellcare's request for restitution based on its participation in the fraud conspiracy. Through its textual references to a "defendant" and a "victim," the MVRA contemplates at least two distinct classes of individuals: perpetrators and victims. The MVRA highlights the perpetrator-victim distinction when it states, "the defendant [must] make restitution to the victim." See 18 U.S.C. § 3663A(a)(1); see also id. (stating that a "victim" is "any person directly harmed by the defendant's criminal conduct"). Thus, given the MVRA's text, a victim does not exist without a perpetrator, and a perpetrator cannot be his own victim.[6]

Consequently, an entity that admits to engaging in illegal fraud cannot be a "victim" of that fraud for purposes of the CVRA and MVRA. Accord United States v. Lazarenko, 624 F.3d 1247, 1249, 1251–52 (9th Cir. 2010) (holding that, "in the absence of exceptional circumstances, a co-conspirator cannot recover

---

[6]Because the MVRA's text forecloses Wellcare's argument that it is a "victim" within the meaning of the MVRA, we need not decide—and, indeed, do not decide—whether the CVRA's prohibition against an accused seeking relief under the CVRA, see 18 U.S.C. § 3771(d)(1), also applies to an accused's attempt to seek restitution under the MVRA. See id. § 3771(a)(6) (allowing "restitution as provided in law").

11

restitution"); United States v. Reifler, 446 F.3d 65, 127 (2d Cir. 2006) ("[A]ny order entered under the MVRA that [treats] coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction, contains an error so fundamental and so adversely reflecting on the public reputation of the judicial proceedings that we may, and do, deal with it sua sponte.").

WellCare contends that it is not a co-conspirator because the fraud was perpetrated by "a small group of top-level Wellcare employees . . . without the involvement, knowledge or approval of the board of directors or the vast majority of WellCare's employees." That observation, however, does nothing to erase WellCare's unqualified admission in the deferred prosecution agreement that the company was, in fact, a co-conspirator.

Further, a corporation only acts or wills by virtue of its employees. See United States v. Dotterweich, 320 U.S. 277, 281, 64 S. Ct. 134, 136 (1943); N.Y. Cent. & Hudson R.R. Co. v. United States, 212 U.S. 481, 492–93, 29 S. Ct. 304, 306 (1909). That is apparently why WellCare admitted to criminal responsibility for the actions of its top-level executives. WellCare made this admission in exchange for the government's agreement to defer prosecution.

In short, WellCare is responsible for the acts of its top-level executives, and the company admitted to being a co-conspirator. It cannot now deny those undisputed facts. By asking for restitution from its top-level executives, WellCare seeks restitution for its own conduct—something it cannot do.

For these many reasons, petitioner Wellcare's admitted participation as a co-conspirator precludes it from attaining victim status under the CVRA or MVRA. Thus, at a minimum, Wellcare has not met its burden to show that its claimed "right to issuance of the writ is 'clear and indisputable.' " See Cheney, 542 U.S. 381, 124 S. Ct. at 2587.

### III. CONCLUSION

Given Wellcare's admitted role in the criminal conspiracy, the district court did not clearly abuse its discretion in denying Wellcare's motion to be recognized as a crime victim and to be awarded restitution. Consequently, Wellcare's petition for mandamus is denied.

**PETITION DENIED.**