# Composite Exhibit A

```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
              Case No. 8:11-cr-115-T-30MAP
```

**UNITED STATES OF AMERICA**

-vs-                                          4 April 2013
                                              8:53 a.m.
**TODD S. FARHA,**                            Courtroom 13A
**PAUL L. BEHRENS,**
**WILLIAM L. KALE,**
**PETER E. CLAY,**

      Defendant.
_____/

```
                       VOLUME 48
         DAILY-COPY TRANSCRIPT OF PROCEEDINGS
                     (JURY TRIAL)
      BEFORE THE HONORABLE JAMES S. MOODY, JR.,
         UNITED STATES DISTRICT COURT JUDGE
```

APPEARANCES
For the Government:       JAY G. TREZEVANT, ESQUIRE
                          CHERIE L. KRIGSMAN, ESQUIRE
                          *Assistant United States Attorneys*
                          *United States Attorney's Office*
                          400 North Tampa Street
                          Suite 3200
                          Tampa, Florida 33602
                          Phone:  (813) 274-6000
                          Fax:    (813) 274-6103
                          jay.trezevant@usdoj.gov
                          cherie.krigman@usdoj.gov

****PORTIONS OF TRIAL PROCEEDINGS TRANSCRIBED DURING AND FOR
USE DURING THOSE PROCEEDINGS MAY NOT BE READ TO THE JURY****

                        \* \* \* \* \*
*NOTE:  ALL AUDIO AND VIDEO MATERIAL DISPLAYED WITHIN THIS*
 *VOLUME ARE EXACT QUOTES OF BOTH WORD AND PUNCTUATION FROM*
 *THE ORIGINAL TRANSCRIPTS PROVIDED TO THE COURT AND/OR JURY*
  *AND HAVE NOT BEEN EDITED BY THE OFFICIAL COURT REPORTER.*
                        \* \* \* \* \*

(appearances continued on next page)

STENOGRAPHICALLY REPORTED
COMPUTER-AIDED TRANSCRIPTION

          Sherrill L. Jackson, RPR, FPR
    Official Court Reporter, U.S. District Court
     Middle District of Florida, Tampa Division

```
 1  pages together, is that actually Mr. Farha signed an
 2  amendment to the contract and his signature's dated -- is
 3  his signature dated September 30, 2002?
 4  A    Okay.  I accept it for what it purports to be.
 5          MR. BOWERS:  Thank you, Mr. Rainer.
 6          We have nothing further on direct.
 7          THE COURT:  All right.
 8          Cross?
 9                      CROSS-EXAMINATION
10          MR. LAURO:  Good morning.
11          Morning, Your Honor.
12  BY MR. LAURO:
13  Q    Mr. Rainer, I'm John Lauro for the defense.  I
14  represent Mr. Behrens.
15       How are you this morning?
16  A    Good.
17  Q    AHCA created a regulatory nightmare in connection with
18  80/20.  Would you agree?
19          MR. BOWERS:  Objection, Your Honor.
20          THE COURT:  Overruled.
21          THE WITNESS:  It was -- it was a quagmire.
22  BY MR. LAURO:
23  Q    Why was it a quagmire?
24  A    It was a new statute.  It was just being implemented
25  initially.  There were questions of definition, what was
```

```
 1  intended, how far you can go.  I mean, as lawyers, we look
 2  at every word and interpret every word.
 3  Q    And AHCA was all over the place; correct.
 4         MR. BOWERS:  Objection, Your Honor.
 5         THE COURT:  Sustained.
 6         Sustained.  There's no question pending.
 7         THE WITNESS:  I'm sorry.
 8  BY MR. LAURO:
 9  Q    AHCA gave inconsistent guidance concerning the 80/20
10  statute; correct?
11         MR. BOWERS:  Objection, Your Honor, vague.
12         THE COURT:  Overruled.
13         THE WITNESS:  It was spotty and muddy, yes.
14  BY MR. LAURO:
15  Q    It was difficult to have follow, would you agree?
16  A    At sometime, yes (nodding head).
17  Q    In fact, AHCA didn't speak with one voice on 80/20, did
18  it?
19  A    No.
20         MR. BOWERS:  Objection.
21         THE COURT:  Overruled.
22  BY MR. LAURO:
23  Q    In other words, there were differences of opinion
24  within the Agency how to interpret that statute, would you
25  agree.
```

```
 1  healthcare organization in connection with the 80/20

 2  calculation; correct?

 3           MR. BOWERS:  Objection, Your Honor, relevance.

 4           THE COURT:  Overruled.

 5           THE WITNESS:  Can I say?

 6  BY MR. LAURO:

 7  Q    Yeah, take your time.

 8  A    Okay.

 9  Q    You would agree, one reasonable interpretation of that

10  statute is you could include BHO expenses; correct,

11  behavioral health organization?

12  A    Yes.

13  Q    That's one reasonable way of reading it; correct?

14  A    Yes.

15  Q    AHCA never promulgated any kind of policy statement

16  that said you couldn't include the expenses of a BHO,

17  behavioral health organization, in connection with the 80/20

18  calculations, did it, to your knowledge?

19  A    Correct, yeah.  I mean, it contemplates it where it

20  says "capitated provider service networks."

21  Q    Exactly.  It contemplates the kind of expenses that you

22  would have with a BHO; correct?

23  A    It contemplates that you'll be contracting with

24  capitated provider service networks, yes.

25  Q    Exactly.
```

```
 1  BY MR. LAURO:
 2  Q    In fact, you described it as an accounting nightmare;
 3  correct?
 4  A    It was a legal nightmare as a lawyer, yes.  It was hard
 5  for me --
 6  Q    Why?  Why, Mr. Rainer?
 7  A    Because they're coming out -- there's nothing in the
 8  statute that limited the two categories that they had, and
 9  you have a client that says, "In my operations we do this,
10  we do that, we provide these services for behavioral health,
11  and why can't we get reimbursement for -- or count them
12  towards the calculation?"
13  Q    Well, it's not getting reimbursement, though, let's be
14  fair.
15  A    Correct.  I meant, couldn't calculate it towards the
16  calculation that they were making.
17  Q    In other words, it was getting credit for it.  It was
18  the State recognizing that the services were being provided
19  and the HMOs should get credit; wasn't that really the issue
20  with 80/20?
21          MR. BOWERS:  Objection, Your Honor, argumentative.
22          THE COURT:  Overruled.
23          THE WITNESS:  That was a big issue, yes.
24  BY MR. LAURO:
25  Q    Now, the prosecutor showed you a contract and a
```

1 contractual provision, and I'm going to go back to that
2 contract. It's Defendant's 91 -- excuse me, 0128 (changing
3 overhead exhibit). You don't have it in front of you. It's
4 one of our exhibits.
5 A   Okay.
6 Q   Yeah, we're going to try to simplify it as much as
7 possible.
8     But let's direct your attention to page 118, which is
9 the 80/20 provision (changing overhead exhibit), and we'll
10 put it up on the screen if it's easier for you. It's
11 section 6.3.8.
12 A   Okay.
13 Q   Okay. This is the --
14 A   You said page 118?
15 Q   I believe it is.
16 A   Mine is not that.
17 Q   All right.
18 A   It's actually page 116 on mine.
19 Q   My apologies.
20 A   Okay.
21 Q   This is the actual 80/20 provision in the contract;
22 correct?
23 A   Correct.
24 Q   There's nothing in that provision that limits
25 expenditures to location; correct?

```
 1  A    Correct.
 2  Q    There's nothing that limits it to codes; correct?
 3  A    To codes?
 4  Q    Codes.
 5  A    No.
 6  Q    There's nothing that limits it to community mental
 7  health centers; correct?
 8  A    No, no.
 9  Q    And there's nothing in that provision that says that an
10  HMO cannot use the expenses of a BHO in doing the 80/20
11  calculation; correct?
12  A    Correct.
13  Q    So, one reasonable interpretation of the contract is
14  that you could use -- an HMO could use the expenses of a BHO
15  in connection with the 80/20 report; correct?
16          MR. BOWERS:  Object, Your Honor.  Asked and
17  answered.
18          THE COURT:  Overruled.
19          THE WITNESS:  Correct.
20  BY MR. LAURO:
21  Q    Now, during this time period, however, there had been
22  no case law interpreting that contract; correct, to your
23  knowledge, that contractual provision?
24  A    This particular provision, no.
25  Q    No -- no decision by Judge Moody or are anyone else
```

```
1   A     I think you're required to --
2   Q     All right.
3   A     -- to give those reports.
4   Q     And at this point, this letter -- let's take a look at
5   this letter -- the date of the letter (changing overhead
6   exhibit).  This was well after the 80/20 statute had been
7   passed in 2002; correct?
8   A     Correct.
9   Q     So, AHCA certainly knew about the 80/20 statute; right?
10  A     Yes.
11  Q     And now it knows that the WellCare group using a
12  related behavioral healthcare organization; correct?
13  A     Correct.
14  Q     At that point, if it wanted to, AHCA could have
15  initiated a dispute concerning the 80/20 calculation;
16  correct?
17  A     It wasn't -- it wasn't ripe yet.  It wasn't germane.
18  Q     It would only be ripe or germane if there was, in fact,
19  a dispute; right?
20  A     Correct.
21  Q     Okay.  By the way, at any point -- at any point, AHCA
22  could seek an amendment to the contract or a contractual
23  provision prohibiting the use of a BHO in connection with
24  the 80/20 calculation; correct?
25  A     You showed me a statute earlier, which I think would
```

1  have prohibited them from doing that.
2  Q    Well, we're going to get to that statute.  But I'm
3  talking about --
4  A    Not if it's in violation of statute, no.
5  Q    Okay.  So, in other words, if the statute permits it,
6  then AHCA can't write a contractual --
7  A    No.
8  Q    That's my point.
9  A    No.
10 Q    Okay.  So, in other words, when the statute permits the
11 use of a BHO, AHCA can't write into the contract something
12 that prohibits the use of a BHO; right?
13 A    Correct --
14           MR. BOWERS:  Objection, asked and answered, and
15 counsel's testifying.
16           THE COURT:  Overruled.
17           THE WITNESS:  Correct.
18 BY MR. LAURO:
19 Q    Mr. Rainer, can you think back to 2003, and just
20 describe kind of the corporate things that you were doing
21 in connection with the creation of the BHO?
22 A    Uh, I really --
23 Q    Just a little louder -- yeah.
24 A    Yeah.  I remember mostly doing the -- the provider
25 contract.  I think I worked some on the Administrative