UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 8:11-CR-115-T-30MAP

THADDEUS M.S. BEREDAY

**UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT BEREDAY'S MOTION *IN LIMINE*** 

The United States of America (or the "government") submits this response in opposition to *Defendant Thaddeus Bereday's Motion in Limine* ("Bereday's Motion"), filed on October 3, 2014. Doc. 939. As explained below, the Court should deny Bereday's Motion because it seeks relief that (1) is contrary to Eleventh Circuit Law, (2) mischaracterizes the government's arguments, and (3) inevitably would lead to jury confusion.

**ARGUMENT**

A.   Introduction

As alleged in the Indictment and argued by the government throughout the pendency of this case, the defendants and others conspired to fraudulently reduce the WellCare HMOs' annual refunds to AHCA under the relevant Medicaid HMO contracts, using various acts and strategies. Doc. 1, Indictment at ¶ 26(a). Such acts and strategies included, among others, including bogus, concocted expenditure information in the certified 80/20 Behavioral Health Care Worksheets submitted to AHCA (*id.* at ¶ 26(a)(i)); and reporting expenditures made by the WellCare HMOs in AHCA Areas other than

Areas 1 and 6 as expenditures for HMO members receiving services in Areas 1 and 6. *Id.* at ¶ 26(a)(iii).

Further, in an attempt to avoid raising a red flag and drawing AHCA's scrutiny to their fraudulent Behavioral Health Care Worksheets, the conspirators annually determined and refunded to AHCA a total combined 80/20 refund approximating $1 million (to appease the AHCA gods). *Id.* at ¶ 26(b). That process involved, in part, creating and considering multiple potential refund scenarios primarily based upon result-oriented, "black box" calculations (seeking a refund approximating $1 million), rather than simply calculating the refunds in accordance with AHCA's instructions and guidance, which were well-known and understood. *Id.* at ¶ ¶ 26(b)-(d), and 27(k), (n), and (v). As a result, the annual expenditure (fraudulently increased) and refund (fraudulently reduced) amounts ultimately selected and submitted by the conspirators to AHCA in the Behavioral Health Care Worksheets were the products of inconsistent methodologies or approaches. *Id.* at ¶ 26(c). The conspirators created and utilized a wholly-owned subsidiary named Harmony to obfuscate and conceal that the expenditures included in the Behavioral Health Care Worksheets had been fraudulently increased (to reduce the 80/20 refund obligations). *Id.* at ¶ 26(a)(ii).

Bereday's Motion now requests that this Court (1) admit into evidence at trial *three out-of-context government arguments* or "statements" culled from government filings (responding to defense straw man arguments) as party admissions under Fed. R. Evid. 801(d)(2), and (2) forbid the government from making any statements that Bereday believes are contrary to those arguments. Thus, Bereday's Motion is yet another

wrongheaded attempt to confuse the jury by obscuring the government's actual prosecution theory and arguments and hobble the government's ability to respond.

      B.     <u>Bereday's Motion is Contrary to Controlling Eleventh Circuit Law</u>

As more fully explained below, the "statements" raised by Bereday's Motion are not statements of fact equivalent to testimonial statements but are actually *fragmented, out-of-context government arguments culled from court filings* that, when considered in context, are wholly consistent with government theories and arguments raised throughout the pendency of this case. As a result, the "statements" are not party admissions and so inadmissible under Eleventh Circuit law. *See, e.g., United States v. DeLoach*, 34 F.3d 1001, 1005-1006 (11th Cir. 1994).

Bereday's Motion fails to cite a single case from the Eleventh Circuit in which a government statement was extracted from *a court filing* and properly admitted into evidence at trial as a party admission under Rule 801(d)(2). Indeed, Bereday's Motion only cites two Eleventh Circuit cases, both of which held that, *even in the context of trial,* the government's statements at issue were not admissible as admissions of a party opponent under Rule 801(d)(2). Doc. 939 at 4 n.2; *and see DeLoach*, 34 F.3d at 1005-1006; *and United States v. Kendrick* 682 F.3d 974, 987-988 (11th Cir. 2012).

In *United States v. DeLoach,* the trial court had denied admission of the prosecutor's statements made during closing arguments in an earlier trial of Deloach's codefendants, explaining that an attorney's arguments are not evidence[1] and that the admission of the statements "would create a substantial likelihood of jury confusion under

---

[1] The trial court further noted that the jury would be instructed that what the lawyers say is not evidence in the case.

3

[Fed. R. Evid. 403]." *Id.* at 1005 n.7. On appeal, DeLoach argued that the trial court had erred when it had refused to admit the prosecutor's statements as an admission by the government, a party opponent, under Rule 801(d)(2). *Deloach*, 34 F.3d at 1005.

In reaching its decision, the Eleventh Circuit noted that the Second Circuit, in *United States v. McKeon*, 738 F2.d 26, 33 (2nd Cir. 1984), had previously addressed a similar issue (internal citations, quotations, and brackets omitted):

> In *McKeon*, the [Second Circuit] said that opening statements of a defendant's attorney in a criminal case are admissible under Rule 801(d)(2) where they are: 1) assertions of fact that are the equivalent of a testimonial statement by the client; and 2) inconsistent with similar assertions in a subsequent trial.

*Id.* However, in discussing *McKeon*, the Eleventh Circuit also made clear that whereas an attorney's comments may be admissible in the Second Circuit, such admissibility is tightly circumscribed and that, per the Second Circuit, speculations of counsel, invitations to draw inferences, advocacy as to the credibility of witnesses, or arguments should not be admitted. *Id.*

Ultimately, the Eleventh Circuit in *DeLoach* concluded that, even under the Second Circuit's standard, the prosecutor's comments in the first trial were inadmissible as statements of a party opponent under Rule 801(d)(2). In reaching its conclusion, the Eleventh Circuit observed that the statements at issue were made during the closing arguments of the earlier trial (not during opening statements in which lawyers are prohibited from arguing) and were not statements of fact equivalent to a testimonial statement nor clearly inconsistent with the government's position in the case. *Id.* at 1005-1006. The Court also concluded that the trial court had not abused its discretion in

prohibiting the admission of the prosecutor's comments. Of course, both the Eleventh Circuit in *DeLoach* and the Second Circuit in *McKeon* were addressing statements or arguments made at trial and *not a statement or argument culled from a government filing*.

Here, the "statements" raised in Bereday's Motion are neither statements of fact equivalent to testimonial statements and certainly are not inconsistent with the government's positions in this case. Instead, as explained more fully below, the government's "statements" are only isolated fragments of larger government arguments and are fully consistent with other government positions that have been articulated in this case. Accordingly, even under *DeLoach,* the government's arguments are inadmissible as statements of a party opponent under Rule 801(d)(2). *See also United States v. Kendrick* 682 F.3d 974, 987-988 (11th Cir. 2012) (after considering *DeLoach,* court determined prosecutor's closing arguments in previous trial are not evidence and could not be admitted in subsequent trial; further, even if statements could be considered to be evidence, statements could have been properly excluded under Rule 403).[2]

   C.   Bereday's Motion Lifts Fragments of Government's Arguments Out Of Context

An examination of the three government assertions in context reveals that each was made as part of a more comprehensive government response to a straw man argument raised by the defense.[3] For example, one of the listed "statements" that

---

[2] As noted in *Kendrick*, the Eleventh Circuit in *DeLoach* did not expressly adopt the Second Circuit's standard. *Kendrick,* 682 F.3d at 987-988.

[3] As explained in earlier government filings, the defense has routinely engaged in a practice of disregarding the actual charges in the Indictment (and the government's true prosecution theory) and instead worked to recast the Indictment, or some aspects thereof, to fit a defense argument, theory, or strategy. *See, e.g.,* Doc. 76 at 11 n.12; Doc. 97 at 9 n.11; and Doc. 143 at 6 and n.4. As a result, the government has been forced repeatedly to address a collection of defense straw man arguments.

Bereday seeks to admit at trial as a government statement (and to prevent the government from fully addressing through argument) is:

> [T]he defendants *could* have taken this approach by openly and honestly reporting to AHCA the actual amount of the subcapitated expense paid to Harmony.

Doc. 939 at 1. In isolation, the defense could (and no doubt would) argue that this statement suggests that it is the government's position that the defendants reasonably could have interpreted the AHCA 80/20 cover letters and templates as permitting the WellCare HMOs to report the full subcapitation expenditures to Harmony, regardless of whether Harmony had expended any of the payments to actual providers for qualifying CMH/TCM services. Of course, that is not the government's position. Consistent with the Indictment's allegations,[4] the government has maintained throughout this case that the 80/20 cover letters and templates (and other relevant AHCA communications) made clear to the WellCare HMOs (and to these defendants) that only expenditures *made to qualified AHCA providers for qualifying CMH/TCM services*[5] were to be counted as expenditures in completing the 80/20 templates.[6]

---

[4] *See, e.g.,* Doc. 1 at ¶¶ 10-18 and 26.

[5] Harmony was not a qualified AHCA provider. The government recognizes that for CY 2006, AHCA permitted the Florida Medicaid HMOs to count some additional expenditures for 80/20 purposes.

[6] In an effort to focus the case and to reduce unnecessary argument, the government has, at times, taken a conservative approach and has declined to argue against the inclusion of certain expenditures for 80/20 purposes (such as expenditures paid to CompCare and various operating expenses for an office in Pensacola that likely provided some qualifying services). *See, e.g.*, Doc. 631 at 38-39 (Kelly) and Doc. 819 at 27. As made clear in the *United States' Reply To Defendants' Response To The Government's Trial Brief Regarding The Amount Of Loss*, even after including these expenditures, there is still a loss to the Florida Medicaid program in excess of $20 million. Doc. 819 at 27.

The extracted "statement" presented in Bereday's Motion as reflecting the government's position is, in fact, merely one part of one sentence lifted from one paragraph in a lengthy government motion *in limine* to preclude the defendants from presenting the irrelevant, confusing, and prejudicial opinion testimony of anticipated defense witness Carl Liggio. Doc. 325. Indeed, when it is read in context, the government's argument (or "statement") only assumes *arguendo* what the defendants *could have done* (but did not do) that might have made Liggio's opinions relevant. This is illustrated below (the "statement" at issue in Bereday's Motion is bolded and underlined; other emphasis in original; footnotes omitted):

> Defendants are attempting, once again, to portray their conduct and submissions to AHCA as a "reasonable" interpretation of the statute and rules. But that is not what this case is about. The Indictment alleges that defendants submitted false statements by simply *concocting bogus expenditure information* each year in an effort to placate AHCA and divert suspicion, *not* that they submitted the actual amount of their subcapitated payment to Harmony. As the government argued in a previous filing, **the defendants *could* have taken this approach by openly and honestly reporting to AHCA the actual amount of the subcapitated expense paid to Harmony**. Now, defendants seek to present expert opinion testimony that a general counsel may "interpret" the statutes and regulations in a different way, and submit expenditure data to AHCA, knowing that AHCA might later disallow the expenditures. This is the sort of "cat and mouse" game the Eleventh Circuit has roundly condemned. *See United States v. Calhoon*, 97 F.3d 518, 529 (11th Cir.1996).
>
> The defendants are charged with submitting bogus expenditure information to AHCA; not expenditures calculated in another "reasonable" way, in reliance upon the advice of counsel or subject matter experts. Thus, Attorney Liggio's perception of Bereday's interpretations of the statute and AHCA policies—or how a hypothetical general counsel might act in similar situations—is wholly irrelevant to any issue in the case and would most certainly confuse and mislead the jury.

7

Doc. 325 at 14-15. Thus, when the partial "statement" is put into context, it becomes clear that the government's actual argument is that the anticipated defense opinion testimony would be highly irrelevant and prejudicial because the defendants in fact *did not* base their submitted 80/20 expenditure figures on the amount paid to Harmony but instead submitted concocted, bogus expenditure information meant to placate AHCA and divert suspicion.

Incredibly, however, defendant Bereday—using part of one sentence—now misleadingly argues that there is "no doubt that the [statement reflects] the government's belief that using subcapitation payments to comply with the 80/20 Statute was permissible." Doc. 939 at 3. In making that argument, Bereday ignores (or intentionally omits) critical aspects of the government's position. For example, the government repeatedly has emphasized that only payments made to qualified AHCA providers (which does not include Harmony) for qualifying CMH/TCM services could be properly included for 80/20 purposes.

Similarly, Bereday's Motion improperly argues that two other *fragmented, out-of-context arguments*, or "statements," reflect the government's position in this case and so should be admitted into evidence at trial:

> 1. "The United States . . . certainly does not intend to argue that defendants were required to report only 'direct payments to behavioral health care providers,' as such an interpretation would be contrary to the clear language requiring them to report money 'paid directly or indirectly to behavioral healthcare providers for the provision of those required behavioral health care services.'" (Dkt. 356 at 4, n. 2; Dkt. 409 at 4, n. 3)
>
> 2. ". . . . [T]he government did not (and does not) challenge the propriety of counting subcapitation payments to Harmony for 80/20 purposes. Indeed, the government has maintained throughout this case

> that, to the extent the subcapitation payments to Harmony were expended to providers for qualifying CMH/TCM services, the payments could be counted." (Dkt. 772 at 31 n. 24)

Doc. 939 at 1.

Much like the partial sentence culled from the government's motion *in limine* concerning Carl Liggio, the first of the above statements was extracted from a lengthy footnote in the *United States' Motion In Limine To Exclude Under Fed. R. Evid. 401- 403 Proposed Expert Opinion Testimony Of Dr. Zachary Dyckman.* Doc. 356. That footnote reads, in pertinent part (the "statement" at issue in Bereday's Motion is bolded and underlined; other emphasis in original):

> The disclosure letter implies still more opinions, but none of those deserves mention beyond this footnote:
>
> Dr. Dyckman would opine, apparently in response to anticipated government evidence, that it would be "unreasonable" to interpret defendants' agreement as requiring them to report only "direct payments to behavioral health care providers." See Ex. 1 at 3, ¶ 3. **The United States, however, certainly does not intend to argue that defendants were required to report only "direct payments to behavioral health care providers," as such an interpretation would be contrary to the clear language requiring them to report money "paid directly *or indirectly* to behavioral health providers for the provision of those required behavioral health care services."** Thus, Dr. Dyckman's rebuttal opinion is unnecessary and will not be admissible as relevant to any issue in the case.
>
> * * *

Doc. 356 at 4 n. 2.

Again, in context, it is clear that the government was addressing in its motion the fact that Dr. Dyckman's proposed opinion testimony was irrelevant, since the government was not going to argue that the WellCare HMOs were permitted to report only direct payments to providers for 80/20 purposes. Instead, the government

intended to (and did) argue consistent with the allegations in the Indictment that *direct and indirect payments to qualified AHCA providers* (again, which does not include Harmony) for qualifying CMH/TCM services could be counted in calculating the 80/20 refunds.[7] Thus, Bereday's Motion again ignores an important aspect of the government's position, namely that only payments made to qualified AHCA providers for qualifying CMH/TCM services could be properly included for 80/20 purposes.[8]

The remaining "statement" raised by Bereday's Motion, much like the other two "statements," is nothing more than one footnote in a lengthy brief—the *United States' Consolidated Response To Defendants' Renewed Rule 29 Motions For Judgment Of Acquittal*, Doc. 772—that Bereday has now lifted out-of-context (and without its original emphasis) in the hopes of confusing the jury. That footnote reads (the "statement" at issue is bolded and underlined; other emphasis in original):

---

[7] *See, e.g.*, Doc. 1 at ¶ ¶ 14-18. The defense has continued to argue a strained and illogical construction of AHCA's cover letters and contracts, specifically, that the language "paid directly or indirectly to behavioral health providers" means the amount the HMOs paid to Harmony, regardless of whether any of that amount reached an actual behavioral health provider. The government notes that this argument appears to be nothing more than a post-hoc defense theory. There is no existing evidence suggesting that any of the defendants was in any way confused by AHCA's guidance. There is, however, ample evidence that the defendants disliked and disagreed with AHCA's guidance, and so engaged in the charged fraudulent conduct.

[8] Moreover, a thorough reading of the government's motion *in limine* concerning Dr. Dyckman's anticipated opinions, reveals that the above "statement" was included in a lengthier explanation addressing why Dr. Dyckman's opinions were irrelevant, confusing, and prejudicial. Dr. Dyckman's main opinions concerning his proposed "reasonable interpretations" of the 80/20 reporting requirement were (and remain) irrelevant to any issue in the case—and therefore not admissible under Fed. R. Evid. 702, as they will not assist the trier of fact—absent any evidence that defendants' statements are actually true under them.

The evidence at the codefendants' trial established that the defendants did not base their 80/20 calculations on a reasonable interpretation of the 80/20 reporting requirements. Instead, they concocted bogus expenditure information each year in an effort to placate AHCA and divert suspicion. As the Court explained during the sentencing hearing of the other codefendants: "Then to make matters worse, when it came time to fill out the report back to AHCA at the end of each year, they came up with a number not that reflected what they paid Harmony, but a number that was thought would please AHCA and distract them from trying to do a financial audit to undercover—I mean to uncover what really made up those numbers. That's fraud, and it doesn't take a healthcare expert to know that if that's the purpose of the plan, that is fraud." Doc. 904 at 88.

> "Contrary to defendants' claims, **the government did not (and does not) challenge the propriety of counting subcapitation payments to Harmony for 80/20 purposes. Indeed, the government has maintained throughout this case that, to the extent the subcapitation payments to Harmony were expended *to providers for qualifying CMH/TCM services*, the payments could be counted.**"

Doc. 772 at 31 n. 24. In other words, in responding to a defense straw man argument, the government explained that it was not challenging the propriety of counting payments to providers for 80/20 purposes, regardless of whether those payments were made directly to the provider or were made to the provider via some other entity, such as Harmony. In any event, the government certainly did not assert that a subcapitation payment to Harmony could be counted for 80/20 calculation purposes, regardless of whether any of that subcapitation payment was actually made to a provider for qualifying services.[9]

---

[9] Thus, as all are aware, the government called Harvey Kelly at the initial trial of the codefendants to present his, Kelly's, forensic analysis of the amounts actually expended by the WellCare HMOs to providers (which does not include Harmony) for qualifying CMH/TCM services.

11

## **CONCLUSION**

In sum, the Court should deny Bereday's Motion because it seeks relief that is contrary to Eleventh Circuit Law, mischaracterizes the government's arguments, and inevitably would lead to jury confusion.

                Respectfully submitted,

                A. LEE BENTLEY
                Attorney for the United States

By:   s/ *Jay G. Trezevant*
       JAY G. TREZEVANT
       Assistant United States Attorney
       Florida Bar No. 0802093
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       Telephone: (813) 274-6312
       Facsimile: (813) 274-6103
       E-mail: jay.trezevant@usdoj.gov

       *s/ John A. Michelich*
       JOHN A. MICHELICH
       Senior Litigation Counsel
       Illinois Bar No. 1903829
       950 Constitution Ave., N.W.
       Bond Building, Suite 4000
       Washington, D.C. 20530
       Telephone: 202-514-0931
       Facsimile: 202-514-7021
       E-mail: john.michelich@usdoj.gov

**U.S. v. THADDEUS M.S. BEREDAY**  Case No. 8:11-CR-115-T-30MAP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Counsel for the following defendants:

Thaddeus M.S. Bereday

        s/ *Jay G. Trezevant*
        Jay G. Trezevant
        Assistant United States Attorney
        Florida Bar No. 802093
        400 North Tampa Street, Suite 3200
        Tampa, Florida   33602
        Telephone:   (813) 274-6312
        Facsimile:   (813) 274-6103
        E-Mail:   jay.trezevant@usdoj.gov